PARKER, GILSON & DEWEY *v.* JOSEPH ADAMS & SON.

*Construction of Contract.*

The parties were members of an association of marble dealers, and entered into a contract in 1869, whereby the plaintiffs agreed to furnish the defendants a certain quantity of marble each year for six years, at $1.75 per cubic foot. Said contract recited that said price was based upon the then present schedule of prices of said dealers, and provided that if said schedule should be changed during the term of said contract, the first schedule issued by said dealers in each year, should be adopted for the entire year, in lieu of the one then in force, and said price varied to conform thereto, by adding' or deducting therefrom the proportionate rate per cent. of the aggregate variation of such schedule. *Held,* that it was not the price of particular classes of marble that the parties had in view; but the state of the marble market generally, in respect to the price in each year, and to be determined by reference to the schedules of such year.

Other schedules were issued by said dealers in 1870 and 1871, which contained various classes and kinds of manufactured marble which said dealers put upon the market, with the prices affixed to each, some by the cubic foot and some by the superficial foot, and varying somewhat from the prices contained in the schedule of 1869. To find the price of marble under the contract in 1871, *held,* that the whole schedules of 1869 and 1871 should be brought to a common standard of measurement—the cubic foot—then ascertain the price of a cubic foot of each article enumerated in said schedules, and the aggregate difference between the prices given therein, and by that difference, determine the variation from the $1.75, and deduct that variation from that price, to find the price to be paid per cubic foot in 1871.

COVENANT. Pleas, *non est factum*, payment, and performance. Trial by the court, September term, 1873, Rutland county, WHEELER, J., presiding.

The contract declared upon was dated December 1, 1869, and provided for the delivery of a certain quantity of marble by the plaintiffs to the defendants each year, for the full term of six years from the date thereof, at the price of $1.75 per cubic foot. Said price was based upon the then present schedule of prices of the Rutland marble dealers; and the contract provided, that if said schedule should be changed during the term, the first schedule issued by said dealers in each year, should be adopted for the entire year, in lieu thereof, and said price varied to conform thereto, by adding or deducting therefrom the proportionate rate per cent. of the aggregate variation of such schedule. On the 10th of March, 1870, said dealers issued another schedule of

prices, which was the first issued by them that year; and they also issued another sometime in 1871. In the schedules of 1869 and 1870, there was a kind of marble called "statuary," classed under "monumental stock," which was not in the schedule of 1871, and in which the dealers did not deal to any considerable extent that year—only one sale being shown, at $13 per foot. The plaintiffs claimed to recover for the marble furnished by them during the year 1871, at $1.65 per foot; while the defendants claimed that they were liable therefor at only one dollar and thirty-two and one-sixth cents per foot. The court held that the plaintiffs were entitled to recover at the rate of one dollar and sixty and sixty-five thousandths cents per foot, and rendered judgment accordingly; to which both parties excepted.

The other facts sufficiently appear in the opinion of the court.

*Dunton & Veazey*, for the plaintiffs.

The principal question is, to determine the price of the marble under the contract for the year 1871. Upon the point as to the effect of the intent and exposition of the parties, in construing contracts, see *Gray, admr.* v. *Clarke, et al.* 11 Vt. 583; *Austin* v. *Wheeler*, 16 Vt. 95.

*Redfield Proctor* and *Prout, Simons & Walker*, for the defendants, cited *Heald* v. *Cooper*, 8 Me. 32; *Robinson* v. *Walker*, 25 Me. 401.

The opinion of the court was delivered by

PIERPOINT, Ch. J. The only questions in this case arise upon the construction of that clause of the contract entered into by the parties on the 1st day of December, 1869, regulating the price to be paid by the defendants for marble to be delivered by the plaintiffs according to the terms of said contract. That clause of the contract is as follows: "The parties of the second part promise and agree to receive the blocks of marble as above described, from the party of the first part, in manner and form as therein described, and pay therefor the sum of one dollar and seventy-five cents per cubic foot. The foregoing price is based upon the pres-

ent schedule of prices of the Rutland marble dealers ; but if said schedule of prices shall, during the term of this contract, be changed, it is mutually understood and agreed, that the first schedule of prices which shall be issued by said Rutland marble dealers in each year, shall be adopted in lieu of the present one, for such entire year, and the foregoing price of one dollar and seventy-five cents per cubic foot, shall be varied to conform therewith, by adding or deducting therefrom the proportionate rate per cent. of the aggregate variation of such price-list or schedule."

In construing this clause of the contract, we are to look at the whole contract in the light of the surrounding circumstances, the situation of the parties, and the subject-matter. The contract by its terms was to extend through a period of six years from its date ; the parties fixed upon the price to be paid by the defendants for the marble to be delivered the first year, in view of the price of manufactured marble generally at that time, as indicated by the price-list of marble agreed upon and established by the Rutland marble dealers for that year. The price agreed upon for that year, of one dollar and seventy-five cents per cubic foot, seems to have been an arbitrary one, not the result of any precise mathematical calculation, nor made with reference to the particular kinds of marble produced by the defendants' quarry, or any other particular quarry. As the contract was to extend through a period of years, the parties contemplated that during those years succeeding the first, the price of manufactured marble would vary ; and intending that the price to be paid by the defendants for the marble to be delivered by the plaintiffs from year to year, should bear some definite relation to the price of manufactured marble generally, and as it was understood that the Rutland marble dealers were accustomed to issue every year or oftener, a list of the prices of the various kinds of manufactured marble produced and sold by them, thus furnishing a ready means by which to determine the price of such marble in each year, they agreed that the first price-list issued by said dealers in each succeeding year, should be adopted in lieu of the price list of 1869, for the entire year, and that the price to be paid for such marble, should vary from the price to be paid for the first year ($1.75), in the same

proportion that the price-list of such succeeding year varied from the price-list of 1869. In this there is no reference to the various kinds or classes of marble set in such price lists, or the kinds or classes of marble produced by the plaintiffs' quarries. It was not the price of particular classes of marble that the parties had in view ; but the state of the marble market generally in respect to the price in each year, and that to be determined by reference to such price-lists. These parties belonged to the association of Rutland marble dealers, and evidently understood the scope and effect of the language used in this contract, which is simply this ; that if the price of marble goes up in the market as indicated by the price-list, then the amount to be paid by defendants is to be increased in the same proportion. If it goes down, the price is to be diminished ; and the parties have agreed that the price-list shall determine the question. This being so, there is no legal authority in this court, or any other tribunal, to vary the standard which the parties have agreed upon. We have no right to add to or take from the price-list of 1871, any more than we have to take from or add to the price-list of 1869. The price to be paid by the defendants in 1871, is to be determined by a comparison of the price-list of that year with the price-list of 1869. To vary either of these lists, would be to make a list which the said marble dealers have never issued ; and the effect would be, to make a new contract between the parties, and to bind them by an agreement they have never assented to—that we cannot do.

The next question that presents itself is as to the method of determining the proportionate rate per cent. of the aggregate variation of the price-lists of 1869 and 1871. This seems to be, to a large extent, a mathematical rather than a legal proposition. The matter to be determined is the price of a cubic foot of marble. The lists referred to contain the various forms and kinds of manufactured marble that are put upon the market by the Rutland marble dealers, with the prices appended to each ; in some the prices are given per cubic foot, in others the price is given per superficial foot, varying according to thickness, quality, and kind. Bringing to bear upon the question the best mathematical skill that is available to us, we think the true method of solving it is,

Parker et als. *v.* Adams & Son.

to bring the whole of each list to a common standard of measure—say the cubic foot—then ascertain the price of a cubic foot of each article enumerated in each list; then ascertain the aggregate difference between the prices given in the lists of 1869 and 1871; and by that difference, determine the variation from the $1.75 given as the price in 1869; and that variation, when deducted from $1.75, will give the price to be paid per cubic foot in 1871. Upon this method of computation, the price per cubic foot which the defendants are liable to pay for the marble delivered under the contract in 1871, is one dollar and fifty-five and one-fourth cents. Foot stones are in both lists by the piece, and not by the foot; but the price being the same in both, the result is the same. The rule adopted by the producers of marble, and printed on the back of the price-list, we think does not constitute any part of the price-list, and is not to be taken into account in fixing the price under this contract. These rules are adopted to induce customers to purchase in large quantities at one time, and to pay cash rather than to buy on credit.

The judgment of the county court is reversed, and judgment entered for the plaintiffs for the amount of marble delivered in 1871, at $1.55¼ per cubic foot, with interest, deducting payments. As the amounts are not given in the exceptions, and it being understood that there is no dispute between the parties respecting them, the clerk will make the computation and enter judgment accordingly. Both parties excepted. The defendants having prevailed in reducing the amount of the judgment below, are entitled to their costs in this court.