DENNIS KENNEDY *vs.* JAMES McQUAID.

Argued Jan. 23, 1894.    Reversed Feb. 6, 1894.

No. 8511.

**Incredible testimony although uncontradicted may be disbelieved.**

The principle applied that evidence of a suspicious character, or coming from a witness who impeaches his own credibility by damaging admissions, is not conclusive, though uncontradicted, and the jury are not bound to believe it.

**Its probative force is for the jury to decide.**

*Held*, that evidence of this character, purporting to prove that a written instrument is a forgery, is not conclusive, though uncontradicted, but the weight of it is a question for the jury.

**Pleading—Denial not confession and avoidance.**

When the plaintiff pleads title in himself by alleging the source of his title, the defendant cannot, under a general denial in his answer, prove that after plaintiff acquired that title he conveyed it to a third party, as that is not denial, but confession and avoidance.

**Amending pleading on the trial.**

The refusal of the court to allow defendant to amend his answer near the close of the trial *held* not error. Other errors and alleged errors in the rulings of the court below disposed of.

Appeal by defendant, James McQuaid, from an order of the District Court of Swift County, *Gorham Powers,* J., made September 7, 1893, denying his motion for a new trial.

On June 7, 1884, John Tracy purchased of the State the southwest quarter of the northeast quarter of section sixteen (16) T. 121, R. 38, and took a certificate of purchase. On September 29, 1884, he assigned this certificate to the plaintiff, Dennis Kennedy. On June 26, 1885, plaintiff purchased of the State the northeast quarter of the northeast quarter of the same section and took a certificate of purchase. Both pieces were school land.

On June 24, 1887, both certificates were assigned to John Barry. Plaintiff claims the assignments are forgeries, that he never executed either of them. In April, 1891, Barry assigned the certificates to the defendant, McQuaid, and he went into possession of the land and removed the house on one of the forties and has received the rents and profits. Plaintiff brought this action to recover possession of the land and damages for its detention. At the trial June 28, 1892, defendant offered in evidence the assignments to John Barry, but they were excluded and he excepted to the ruling. The jury returned a verdict that plaintiff was the owner of and entitled to the immediate possession of the land and assessed his damages at $310. Defendant moved for a new trial for error in excluding the two assignments to Barry, but was denied. He appeals.

*Spooner & Taylor* and *T. F. Young,* for appellant.

*Foland & McCune,* for respondent.

CANTY, J. The complaint alleged that in 1884, the Commissioner of the state land office made a certificate of sale of a 40-acre tract of school land to one Tracy, who thereafter, in the same year, transferred the same to plaintiff; that in 1885 said Commissioner made another certificate of sale to plaintiff, of another 40-acre tract of land in the same section; that thereafter, on June 24, 1887, some person to plaintiff unknown indorsed on each certificate a forged assignment from plaintiff to one John Barry; and that under the same the defendant wrongfully went into possession of the land, occupied the same, and removed a house therefrom, belonging to plaintiff,—and claims damages therefor, and restitution of the premises.

The answer is a general denial, followed by a special denial that said assignments to Barry are forgeries, but alleging that they are genuine, and that the certificates were taken in the name of Tracy and plaintiff at the request of John Kennedy, the father of plaintiff, who was the real party in interest, and that in April, 1891, Tracy and John Kennedy conveyed both the 40-acre tracts to defendant for full consideration paid by him.

Upon the trial before a jury the plaintiff testified that he never signed or made the alleged assignments to Barry, and on cross-examination admitted that on March 23, 1891, he forged an indorsement on said first certificate in the name of his father, (to whom Barry had transferred the certificate,) purporting to transfer it back to plaintiff himself, and that he appeared before a notary public, and personated his father, John Kennedy, and procured the notary to add an acknowledgment to it, certifying that John Kennedy had appeared before him, and acknowledged the assignment, and procured the signature of two witnesses to it, and recorded such forged assignment to himself. Plaintiff also produced as a witness his brother Matt Kennedy, who testified that he forged said two assignments from plaintiff to Barry, signed plaintiff's name, and procured the signature of witnesses to them, and personated plaintiff before a notary public, in procuring certificates of acknowledgment to the same, purporting to be the acknowledgments of plaintiff, and that the plaintiff was not present when any of this was done. When the plaintiff rested the defendant offered in evidence the alleged forged assignments from plaintiff to Barry as a part of his chain of title. Plaintiff objected, the objection was sustained, and defendant excepted.

We presume, from the remarks of the court upon its ruling on the admission of this and other evidence, that he was of the opinion that it had been conclusively established by the evidence of plaintiff and his brother Matt that these assignments were forgeries, and could not be received in evidence until plaintiff furnished some evidence on his side to prove that they were genuine. We are not of that opinion. These assignments are presumed to be genuine until the contrary appears. The evidence offered to show that they were forgeries was itself of so suspicious a character that, though uncontradicted, the jury would be entitled to disbelieve it. The plain

tiff and his witness were not only self-confessed forgers, but it was all in family transactions; and plaintiff had remained passive since 1887, and allowed his father and Barry to occupy the land, and defendant, also, to occupy it, and remove the house. It was for the jury to say from all the evidence whether these assignments were forgeries or not, and they should have been received in evidence, and the question submitted to the jury.

Defendant, in connection with his offer of these assignments, offered to follow it up with evidence that plaintiff himself delivered them to the register of deeds for record, and the offer was refused. This would be evidence that the instruments were genuine, and that, if plaintiff did not sign them, he at least adopted the signature as his own.

In the course of the cross-examination of plaintiff he was shown an instrument dated April 14, 1890, purporting to be a lease of 120 acres of land, including this 80 acres, from one Birden to one Keilty, in which Keilty agreed to pay, as rent, the third of the crop to Matt Kennedy, and purporting to be signed by plaintiff as a witness. Plaintiff was asked if he so signed it as a witness. His objection to the question was sustained, and defendant excepted. It seems to us that this was also error. Although this lease had no direct connection with the transactions in suit, it, and plaintiff's explanation of it, might throw light on the relations of plaintiff and his brother Matt as to this land. There were other exceptions to the ruling out of the question in cross-examination, as to which we will say that we are of the opinion that cross-examination, in such a case as this, should be allowed a wide latitude.

We may here add that if the jury should find that plaintiff gave his brother Matt verbal authority to execute for him, and in his name, the alleged assignments from him to Barry, even though it was within the statute of frauds, the instruments so executed might still be a license, and a defense to an action of tort for damages for the removal of the building, and for use and occupation of the land. But if the alleged assignments made by his brother were adopted by plaintiff, by delivering them or putting them on record himself, they might be his act, as much as if they were actually signed by him.

There is another question in the case. The defendant offered to prove that on the 7th of April, 1891, plaintiff made and delivered his deed to one Owen McQuaid, by which he purported to convey said land to said Owen McQuaid. Defendant claims that he should be allowed to prove this under the general denial in his answer. We do not think that it is a defense that is necessarily inconsistent with the other defenses in the answer, as claimed by plaintiff, but we are of the opinion that it was inadmissible under the pleadings. The plaintiff has pleaded title by alleging the source of his title. The defendant cannot, under a general denial in his answer, offer proof which confesses and avoids that title by proving that after plaintiff acquired it he made a conveyance of it to a third person.

The refusal of the court, near the close of the trial, to give defendant leave to amend the answer so as to make this evidence admissible, was not an abuse of discretion.

For the errors above mentioned, the order denying the motion for a new trial is reversed.

(Opinion published 58 N. W. Rep. 35.)